## French *versus* Commonwealth *ex rel.* Zimmerman.

1. Sect. 22, art. 5 of the Constitution, requiring the erection of separate Orphans' Courts in counties containing more than 150,000 inhabitants, and constituting the register clerk of such court, is designed to establish a new tribunal for the administration of that branch of the law and to provide for its new officials.

2. It withholds from the former clerk of an Orphans' Court the newly-created powers and duties pertaining to a clerk of the new court.

3. The Act of May 19th 1874, providing for the erection of a separate Orphans' Court in Luzerne county, &c., substantially re-enacts the constitutional requirement.

4. The register of wills in such counties had no such vested right to his office as to preclude the people from abolishing the office or abridging the term by the New Constitution.

5. A register of wills of Luzerne county was commissioned in 1872 for three years; in 1873 a clerk of the Orphans' Court was commissioned for three years; in 1874 a separate Orphans' Court was established. *Held*, that under the New Constitution, the register was clerk of the Orphans' Court.

6. The former Orphans' Court having been abolished by the Constitution, the powers and duties of the clerk fell with it.

May 31st 1875.  At Harrisburg.  Before AGNEW, C. J., SHARS-WOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Luzerne county* : Of January Term 1875, No. 180.

This was a quo warranto, issued out of the Court of Common Pleas of Luzerne county, January 5th 1875, on the relation of Michael Zimmerman against S. L. French, to show by what warrant the respondent exercised the office of clerk of the Orphans' Court of that county, to which the relator averred he had been duly elected and commissioned.

The answer of the respondent was that he had been duly elected register of wills of Luzerne county on the 2d Tuesday of October 1872, and commissioned to hold that office until the 1st day of December 1875, and in pursuance thereof he had been duly qualified, and entered upon the duties of that office, and continued to exercise the same ; that in pursuance of an Act of Assembly of May 19th 1874, sect. 5, Pamph. L. 209, there was organized in Luzerne county a separate court, to be called the " Orphans' Court of Luzerne county," that by virtue of that act the register of wills became clerk of that court ; that said act was enacted under the mandate of sect. 22, art. 5, of the Constitution of Pennsylvania; that by virtue of his election and commission aforesaid and the laws and constitution of this Commonwealth, and in obedience to a decree of the said Orphans' Court of January 4th 1875, the respondent entered upon his duties as clerk of said Orphans' Court, and continues to exercise said office.

The relator demurred to the answer.

The 22d sect. of art. 5 of the Constitution, directs the legisla-

ture "in every county wherein the population shall exceed 150,000, to establish a separate Orphans' Court, and that in any county in which a separate Orphans' Court shall be established, the register of wills shall be clerk of said court."

By sect. 26th of the schedule, "All persons in office in this Commonwealth at the time of the adoption of this constitution, and at the first election under it, shall hold their respective offices until the term for which they have been elected or appointed shall expire, and until their successors shall be duly qualified, unless otherwise provided in this constitution."

The Court of Common Pleas (Harding, P. J.) entered judgment of ouster against the defendant; this was assigned for error on the removal of the record to the Supreme Court by writ of error.

*H. M. Hoyt,* for plaintiff in error.—The relator had no such vested right to the full term of his office as "clerk of the courts," that the people, in convention assembled, could not either abolish his term or his office: Cooley's Constitutional Limitations 276; Butler *v.* Pennsylvania, 10 Howard 402; Commonwealth *v.* Bacon, 6 S. & R. 322; Commonwealth *v.* Mann, 5 W. & S. 418; Barker *v.* Pittsburg, 4 Barr 49. Is either the term or the office abolished by the new constitution, and the Act of 1874, in pursuance of it? He then cited and discussed the sections of the constitution above referred to.

*J. H. Campbell* and *G. B. Kulp,* for defendant in error, also cited and discussed the same sections of the constitution. When the constitution intends to annul an existing law, it expresses the intention in unambiguous language: O'Mara *v.* Commonwealth, 25 P. F. Smith 424; Farmers' & Mechanics' Bank *v.* Smith, 3 S. & R. 69; Monongahela Nav. Co. *v.* Coon, 6 W. & S. 101.

Mr. Justice MERCUR delivered the opinion of the court, June 8th 1875.

Article 5, sect. 22, of the constitution declares, "in every county wherein the population shall exceed one hundred and fifty thousand, the General Assembly shall, and in any other county may, establish a separate Orphans' Court, to consist of one or more judges who shall be learned in the law, which court shall exercise all the jurisdiction and powers now vested in, or which may hereafter be conferred upon, the Orphans' Courts, and thereupon the jurisdiction of the judges of the Court of Common Pleas within such county, in Orphans' Court proceedings, shall cease and determine. In any county in which a separate Orphans' Court shall be established, the register of wills shall be clerk of such court, and subject to its directions in all matters pertaining to his office; he may appoint assistant clerks, but only with the consent and approval of said

[French v. Commonwealth.

court.    All accounts filed with him as register or as clerk of the
said separate Orphans' Court shall be audited by the court without
expense to parties, except where all parties in interest in a pend-
ing proceeding shall nominate an auditor, whom the court may, in
its discretion, appoint.   In every county Orphans' Courts shall pos-
sess all the powers and jurisdiction of a Register's Court, and
separate Registers' Courts are hereby abolished."

Thus this section provides for the erection of a new court; when
erected all jurisdiction in Orphans' Court proceedings is taken from
the judges of the Court of Common Pleas and vested in this new
court.    The former clerk of the Orphans' Court does not become
clerk of the new court, but the register of wills becomes its clerk.
It is not the former clerk of the Orphans' Court that the constitu-
tion declares shall be subject to the direction of the new court;
but it is the new clerk, the register of wills.    It is this new clerk,
and not the old one, who is authorized to appoint assistant clerks.
There is nothing in the section, either expressed or implied, indica-
ting that the clerk of the former Orphans' Court should become
clerk of the new Orphans' Court for a single hour.    The manifest
design was to establish a new tribunal for the administration of
that branch of the law, and provide for its new officials.    The
same section that takes from the judges of the Court of Common
Pleas all Orphans' Court jurisdiction, and from a register of wills
all power to sit in a Register's Court, just as clearly withholds
from the former clerk of an Orphans' Court the newly-created
powers and duties appertaining to a clerk of the new court.

Hence the Act of Assembly of the 19th of May 1874, pro-
viding for the creation of a separate Orphans' Court in the counties
of Philadelphia, Allegheny and Luzerne, substantially re-enacted
the constitutional requirement, and in the 5th section declared
that the register of wills in each of said counties " shall be the
clerk of such court."

It is well established and conceded that the relator had no such
vested right in his office as to preclude the people from abolishing
the office or abridging his term by the adoption of a new consti-
tution inconsistent therewith.    It is contended, however, such was
not the intention of the present constitution.    In other words, it
is claimed that the relator is continued in office until the expiration
of the term for which he was elected by the 26th section of the
schedule.    It declares " all persons in office in this Commonwealth
at the time of the adoption of this constitution, and at the first
election under it, shall hold their respective offices until the time
for which they have been elected or appointed shall expire, and
until their successors shall be duly qualified, unless otherwise pro-
vided in this constitution."

The closing language of this section clearly indicates that all
persons shall not continue to hold their respective offices until the

expiration of the term for which they were elected. The saving power of the schedule extends not to officers where it is "otherwise provided in the constitution."

The particular court of which the relator had been elected clerk being abolished, his powers and duties as such clerk necessarily fell with it. The continuance of a clerk to a court, after that court has ceased to exist, would present an anomaly that finds no warrant in the constitution or laws of this Commonwealth. Neither the body of the constitution nor the schedule provides for the continuance of an office after all powers and duties are taken therefrom. So far at least as to give to the new Orphans' Court another official as its clerk, it is "otherwise provided in this constitution."

Hence, if we entertained doubts (which we do not) that the office of the relator was substantially abolished and his term abridged by the constitution, it is very clear that he is not thereby transferred to the new Orphans' Court, nor authorized to perform the duties appertaining thereto.

The respondent was duly elected and commissioned register of wills in and for the county of Luzerne. He entered on the duties of that office and continued to discharge them. The learned judge therefore erred in rendering a judgment of ouster against him, and it must be reversed.

> Judgment reversed, and judgment in favor of the defendant, with costs.